**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION**

**REGGIE SWINTON**                                                              **PLAINTIFF**


**v.**                              **Case No. 4:20-cv-00177-LPR**


**10 FITNESS INC RODNEY PARHAM**                               **DEFENDANT**

## ORDER

Before the Court is Defendant's Motion to Dismiss.[1]  For the reasons stated below, the Court GRANTS the Motion to Dismiss.  The dismissal will be without prejudice.

### BACKGROUND

Plaintiff Reggie Swinton is an African American man.[2]  Defendant 10 Fitness Inc. operates a health club on Rodney Parham Road in Little Rock, Arkansas.[3]  On February 21, 2020, Mr. Swinton filed this § 1981 racial discrimination suit against 10 Fitness Inc.[4]

A.  The Original Complaint

Mr. Swinton's original Complaint alleged that Mr. Swinton had a membership contract with 10 Fitness Inc.[5]  Under the membership contract, Mr. Swinton had the right to access and use 10 Fitness Inc.'s health club facilities on Rodney Parham Road in Little Rock, Arkansas.[6]  Mr. Swinton used 10 Fitness Inc.'s facility "for years."[7]

---

[1] Def.'s Mot. to Dismiss Pl.'s First Amend. Compl. (Doc. 20).

[2] Pl.'s First Amend. Compl. (Doc. 19) at 1.

[3] *Id.*

[4] *See* Pl.'s Compl. (Doc. 1).

[5] *Id.*

[6] *Id.*

[7] *Id.*

On or about September 20, 2019, Mr. Swinton was exercising at 10 Fitness Inc.'s facility at around 2pm.[8]  Mr. Swinton stated that, while he was exercising on that day, he "suffered an asthma attack and started wheezing."[9]  Mr. Swinton "called his son to bring his asthma inhaler from the house."[10]

Mr. Swinton alleged that "[s]oon thereafter, a woman, a white female, who was working out in the facility, and was also an employee of [10 Fitness Inc.,] chastised [Mr. Swinton], saying, 'stop staring at me shit.'"[11]  The "offending employee" then told Mr. Swinton, "I work here and I can have you kicked out."[12]  The female employee "then went upstairs to get the manager Joe Davis, a white male."[13]

Mr. Davis told Mr. Swinton "he had to leave the facility."[14]  Mr. Swinton "then asked the general manager of the facility Brett Smith, a white man, his opinion of the situation."[15]  Mr. Smith also said Mr. Swinton "had to leave."[16]  Mr. Swinton alleged that when he "asked why he had to leave Mr. Smith told him it was because he was looking at the white female employee."[17]

Mr. Swinton argued that "[b]y kicking [Mr. Swinton] out of the facility for allegedly looking at a white female, which [he] did not do," 10 Fitness Inc. "constructively terminated the

---

[8] *Id.*

[9] *Id.* at 2.

[10] *Id.*

[11] *Id.*

[12] *Id.*

[13] *Id.*

[14] *Id.*

[15] *Id.*

[16] *Id.*

[17] *Id.*

contract between the parties due to [Mr. Swinton's] race."[18]   The original Complaint contained a single count, which alleged that 10 Fitness Inc. violated 42 U.S.C. § 1981 by "constructively terminat[ing]" the contract on account of Mr. Swinton's race.[19]

On March 10, 2020, 10 Fitness Inc. filed a Motion to Dismiss the original Complaint.[20]   In that Motion, 10 Fitness Inc. characterized Mr. Swinton's cause of action as "constructive discharge" of the contract.[21]   10 Fitness Inc. argued that "[q]uite simply, there is no cause of action for constructive discharge in a non–employment setting, such as this."[22]   It also argued that "even if there was a cause of action for constructive discharge in a non–employment setting, which there is not, the allegations contained in Plaintiff's Complaint are insufficient to support such a claim."[23]

At a July 31, 2020 hearing regarding the Motion to Dismiss, the Court asked Mr. Swinton's counsel to clarify what the Complaint alleged Mr. Smith to have said about the reason why Mr. Swinton had to leave the gym on the day in question.   Specifically, the Court asked Mr. Swinton's counsel if "Mr. Smith actually said the words 'it is because you were looking at the White employee[?]'"[24]   Mr. Swinton's counsel said: "I don't want to make a representation about a quotation because I am on the record and I'm an officer of the Court, and I'm not going to represent something that I can't represent that I know to be factual."[25]   The Court then explained that "if the words came out of Mr. Smith's mouth that said 'I'm throwing you out because you're looking at

---

[18] *Id.*

[19] *Id.* at 2-3.

[20] Def.'s Mot. to Dismiss Compl. (Doc. 3).

[21] *Id.* at 1-2.

[22] *Id.* at 2.

[23] *Id.*

[24] July 31, 2020 Hr'g Tr. at 2.

[25] *Id.*

somebody who was White,'" the Complaint would survive the Motion to Dismiss.[26]  But the Court added that it did not "read that in this allegation."[27]  Rather, the Court read the allegation to say only that Mr. Swinton was told to leave because he was staring at a woman (whom Mr. Swinton's Complaint described as White).  Mr. Swinton's counsel acknowledged that "this wouldn't be the first thing I've inartfully pled in my career."[28]

Conceding that the Court "raised valid issues about the [C]omplaint," Mr. Swinton's counsel asked the Court to dismiss the Complaint without prejudice and to provide an opportunity to amend it.[29]  The Court granted the Motion to Dismiss without prejudice and gave Mr. Swinton 21 days to file an amended complaint.[30]

B.  The Amended Complaint

On October 5, 2020, Mr. Swinton filed an Amended Complaint.[31]  Like the original Complaint, the Amended Complaint contains a single count, which alleges that 10 Fitness Inc. violated 42 U.S.C. § 1981 by "constructively terminat[ing]" the contract on account of Mr. Swinton's race.[32]  The main difference between the original Complaint and the Amended Complaint is that the Amended Complaint contains more details about the interactions between Mr. Swinton and 10 Fitness Inc.'s management.

---

[26] *Id.* at 3.

[27] *Id.*

[28] *Id.* at 5.

[29] *Id.* at 16.

[30] *Id.* at 17-18.

[31] Pl.'s First Amend. Compl. (Doc. 19).

[32] *Id.* at 3.

The additional facts pick up after the white female employee "went upstairs to get the manager Joe Davis, a white male."[33]  "Two white managers"—facility general manager Brett Smith and manager Joe Davis—"came downstairs to talk" to Mr. Swinton.[34]  Mr. Swinton "and the two white managers went upstairs."[35]

Mr. Swinton states that he then began accusing the managers of racial prejudice, and that the managers did not rebut the accusations.[36]  Mr. Swinton "said to the white mangers that if he was white then nothing would have happened," and "[t]he white managers did not disagree with or dispute" the statement.[37]  He then "said that if the woman who allegedly had been looked at had been African American like [Mr. Swinton], then nothing would have happened," and "[t]he white managers did not disagree with or dispute" the statement.[38]  Finally, Mr. Swinton "stated to the two white managers that he was fully aware that the action being taken against him, i.e., being kicked out of the club, was racially motivated," and "[t]he white managers did not disagree with or dispute" the statement.[39]

One of the managers "then looked at Plaintiff and said they would view the video and call him in 24 hrs."[40]  Mr. Davis then "told [Mr. Swinton] he had to leave the facility."[41]  Mr. Swinton "then asked the general manager of the facility Brett Smith, a white man, his opinion of the

---

[33] *Id.* at 2.

[34] *Id.*

[35] *Id.*

[36] *Id.*

[37] *Id.*

[38] *Id.*

[39] *Id.*

[40] *Id.*  Though the Amended Complaint does not specify which of the managers "said they would view the video and call him in 24 hrs," it appears from the context that it was Mr. Davis who made this statement.

[41] *Id.*

situation," and Mr. Smith "also said [Mr. Swinton] had to leave."[42]  Mr. Swinton "asked why he had to leave," and "Mr. Smith told him it was because of the allegations of the white female employee."[43]  Mr. Smith told Mr. Swinton "that he would 'investigate' the allegations against [Mr. Swinton] and contact him in 24 hours," but "[t]his never occurred."[44]  Mr. Swinton asserts that "[b]y kicking [him] out of the facility for allegedly looking at a white female, which [he] did not do, [10 Fitness Inc.] constructively terminated the contract between the parties due to [Mr. Swinton's] race."[45]

On October 13, 2020, 10 Fitness Inc. filed a Motion to Dismiss the Amended Complaint.[46] In that Motion, 10 Fitness Inc. again characterizes Mr. Swinton's cause of action as a "constructive discharge of a non-employment contract,"[47] and again argues that there is no viable "cause of action for constructive discharge in a non-employment setting."[48]  The Motion also argues that, even if there were a viable cause of action under § 1981, the Amended Complaint fails to state sufficient facts to support such a claim.[49]  The Motion asserts that the Amended Complaint "simply indicates a male was asked to leave after making a female uncomfortable," and fails to show that this adverse action was racially motivated.[50]

In his Response Brief, Mr. Swinton argues that the Amended Complaint sufficiently states a claim under § 1981.[51]  He notes that "the Complaint alleges circumstantial evidence to

---

[42] *Id.*

[43] *Id.* at 3.

[44] *Id.*

[45] *Id.*

[46] Def.'s Mot. to Dismiss Pl.'s First Amend. Compl. (Doc. 20).

[47] *Id.* at 1.

[48] *Id.* at 2.

[49] *Id.*

[50] *Id.*

[51] Pl.'s Br. in Supp. of Resp. to Mot. to Dismiss (Doc. 24) at 5.

demonstrate a violation of § 1981."[52]  He asserts that he "has assembled specific facts adequate to show or raise plausible inference that he was subjected to race-based discrimination."[53]

## LEGAL DISCUSSION

When evaluating a Rule 12(b)(6) motion, the Court "must accept as true all of the complaint's factual allegations and view them in the light most favorable to the plaintiff."[54]  Like other types of complaints, "a civil rights complaint must contain facts which state a claim as a matter of law and must not be conclusory."[55]

42 U.S.C. § 1981(a) states that "[a]ll persons . . . shall have the same right . . . to make and enforce contracts . . . as is enjoyed by white citizens."  Congress has specified that "the term 'make and enforce contracts' includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship."[56]  In the Eighth Circuit, "[t]o prevail on a § 1981 claim, a plaintiff must show: '(1) membership in a protected class, (2) discriminatory intent on the part of the defendant, (3) engagement in a protected activity, and (4) interference with that activity by the defendant.'"[57]  More specifically, to prevail on a § 1981 claim, "a plaintiff must initially plead and ultimately prove that, but for race, it would not have suffered the loss of a legally protected right."[58]

In light of the foregoing, to survive a motion to dismiss, a § 1981 complaint must do more than "allege facts plausibly showing that race was a 'motivating factor' in the defendant's

---

[52] *Id.*

[53] *Id.*

[54] *Schaller Tel. Co. v. Golden Sky Sys., Inc.*, 298 F.3d 736, 740 (8th Cir. 2002)

[55] *Gregory v. Dillard's, Inc.*, 565 F.3d 464, 473 (8th Cir. 2009) (citation and internal quotation omitted).

[56] *CBOCS West, Inc. v. Humphries*, 553 U.S. 442, 450 (2008).

[57] *Combs v. The Cordish Companies, Inc.*, 862 F.3d 671, 681 (8th Cir. 2017) (quoting *Gregory*, 565 F.3d at 469).

[58] *Comcast Corp. v. Nat'l Ass'n of African Am.-Owned Media*, 140 S. Ct. 1009, 1019 (2020).

decision";[59] rather, the complaint must contain "'sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face' under the but-for causation standard."[60]  Put another way, the complaint must provide "enough fact to raise a reasonable expectation that discovery will reveal evidence"[61] that, but for the plaintiff's race, the loss of or interference with the contractual right would not have occurred.

The Amended Complaint doesn't meet this threshold.  It fails to plausibly allege that Mr. Swinton's race was the but-for cause of the deprivation of his contractual right to work out at 10 Fitness Inc.'s health facility.  The Amended Complaint's general allegations of race discrimination are conclusory, threadbare, and unsupported.  As to the specific facts alleged in the Amended Complaint, even taking them all as true, they fall well short of raising a reasonable inference of intentional discrimination by 10 Fitness Inc. or its employees.  At bottom, Mr. Swinton's claim is based on nothing more than the racial identities of the people involved.  He (an African American male) was told to leave the gym by two managers (who were white) because a third employee (a white woman) said he was staring at her while she worked out.  That's not enough to raise the specter of intentional racial discrimination.  This is true even though the managers did not respond when Mr. Swinton accused them of racism.

The Amended Complaint does not allege that the female employee or the managers of 10 Fitness Inc. mentioned Mr. Swinton's race at all.  Rather, the Amended Complaint alleges only that Mr. Swinton himself raised the issue of race.  The alleged fact that the "white managers did

---

[59] *Id.* at 1014.  *Compare id.* ("According to this version of [the plaintiff's] argument, a plaintiff should be able to overcome at least a motion to dismiss if it can allege facts plausibly showing that race was a 'motivating factor' in the defendant's decision.") *with id.* at 1018 ("[N]owhere in its amendments to § 1981 did Congress so much as whisper about motivating factors.") *and id.* at 1019 (holding that "a plaintiff must initially plead and ultimately prove that, but for race, it would not have suffered the loss of a legally protected right" in order to prevail on a § 1981 claim).

[60] *Id.* at 1019 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678–679 (2009)) (cleaned up).

[61] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007).

not disagree with or dispute Plaintiff's statement"[62] is not enough to get over the 12(b)(6) hump. Silence is not acquiescence—certainly not under the circumstances present here. The Amended Complaint does not allege that the managers agreed with or affirmed Mr. Swinton's characterization of their conduct or motives. The words and actions of the 10 Fitness Inc. staff, as described by the Amended Complaint, do not even hint at racial motives or effect. There is nothing to suggest that, but for Mr. Swinton's race (or the race of the employee he was staring at), the managers would have allowed Mr. Swinton to continue working out after making someone uncomfortable by staring at that person.[63]

The Amended Complaint has not alleviated the legal concerns that the Court raised at the July 31, 2020 hearing. The facts as pled do not raise an inference "that Mr. Swinton was removed on the day in question because he was Black and the person he was staring at was White, to be distinguished from simply [that] he was somebody staring at somebody else as she worked out."[64] Like the original Complaint, the Amended Complaint cannot not survive a motion to dismiss.

## CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss[65] is GRANTED. As pleaded, the Amended Complaint still fails to state a viable cause of action. However, the Court is not ready to say that there are no set of facts that could be pleaded to get passed a motion to dismiss.

---

[62] Pl.'s First Amend. Compl. (Doc. 19) at 2.

[63] The Amended Complaint says that Mr. Swinton has worked out at the same gym for years. The Amended Complaint does not allege that there has ever been a prior race-discrimination incident involving Mr. Swinton or anyone else. Additionally, it is worth noting that the Amended Complaint does not allege differential treatment of white customers who stare at others while they work out, and it does not allege differential treatment of African American customers who stare at African American women while they work out. Of course, the Court understands that, "[u]nder *Swierkiewicz*, a plaintiff need not plead facts establishing a prima facie case of discrimination under *McDonnell Douglas* in order to defeat a motion to dismiss." *Hager v. Arkansas Dep't of Health*, 735 F.3d 1009, 1014 (8th Cir. 2013).

[64] July 31, 2020 Hr'g Tr. at 17-18.

[65] Def.'s Mot. to Dismiss Pl.'s First Amend. Compl. (Doc. 20).

To be fair, it is very unlikely that Mr. Swinton can plead facts to get passed a motion to dismiss, since he has now had a second unsuccessful bite at the apple.  But we shall see.  The dismissal will be without prejudice.  Judgment will be entered in accordance with this Order.

IT IS SO ORDERED this 21st day of December 2020.

LEE P. RUDOFSKY
UNITED STATES DISTRICT JUDGE